## Cummings v. Whitney et al.

*Martin Croissant*, for plaintiff.

*E. E. McMonigle*, for defendants.

RICHARDSON, J., May 28, 1936.—This is a proceeding in equity, submitted on bill of complaint and answer, together with certain exhibits which were offered in evidence at the hearing. No witnesses were called by the parties. The issue is as to the liability of defendant for funeral benefits. From the pleadings and the exhibits we make the following

### Findings of fact

1. Plaintiff is the widow of Oscar F. Cummings, who died on May 10, 1935, in Pittsburgh, Allegheny County, Pa.

2. Oscar F. Cummings at the time of his death was a member in good standing of Rocks Lodge No. 231, located in the Borough of McKees Rocks, Allegheny County, Pa., a subordinate lodge of the Brotherhood of Railroad Train-

men, whose general officers and principal place of business are in Cleveland, Ohio.

3. Defendant association, the grand lodge, Brotherhood of Railroad Trainmen, is an unincorporated fraternal and beneficial association operating upon the lodge system with its general officers and principal place of business located in Cleveland, Ohio, with numerous subordinate lodges located throughout the State of Pennsylvania.

4. Benefit certificate no. 149561 was duly issued to Oscar F. Cummings on November 21, 1904, by grand lodge, Brotherhood of Railroad Trainmen, and was accepted by him.

5. Said certificate provides, inter alia:

"This beneficiary certificate . . . Witnesseth: That Brother Oscar F. Cummings . . . is entitled to all the rights, privileges and benefits of membership, and to participate in the beneficiary department

CLASS C

of said brotherhood, to the amount set forth in the constitution thereof, which amount in the event of his total and permanent disability shall be paid to him, or at his death shall be paid to Clara F. Cummings, his wife, if living . . .

"This certificate is issued on the express conditions that the said O. F. Cummings shall comply with the constitution, by-laws, rules and regulations, now in force or which may hereafter be adopted by the within named brotherhood, which, as printed and published by the grand lodge . . . are made a part hereof. . . ."

6. At the time Oscar F. Cummings became a beneficiary member of the brotherhood and received the certificate, the constitution of the brotherhood provided:

"Sec. 79: The constitution and general rules herein adopted and every section thereof, shall apply to and govern and control all beneficiary certificates heretofore issued in like manner and to the same extent as those to be hereafter issued."

"Sec. 86: This constitution and general rules and the constitutions of the subordinate lodges may be altered, amended or repealed at any meeting of the grand lodge . . .".

"Sec. 68: Any beneficiary member in good standing who shall suffer the amputation or severance of an entire hand . . . or . . . an entire foot . . . or . . . loss of sight . . . , or upon becoming seventy years of age, shall be considered totally and permanently disabled, but not otherwise, and shall thereby be entitled to receive . . . the full amount of his beneficiary certificate."

"Sec. 70: All claims for disability not coming within the provisions of section 68, shall be held to be addressed to the systematic benevolence of the brotherhood, and shall in no case be made the basis of any legal liability on the part of the brotherhood . . . and if approved by the board, the claimant shall be paid an amount equal to the full amount of the certificate held by him."

7. In 1922, section 70 was amended so as to provide:

"A disabled member paid under this section shall automatically become a non-beneficiary member beginning with the month following the month in which his claim was approved, providing he pays such dues and assessments that are required from non-beneficiary members."

8. In 1911, the constitution and general rules of defendant were amended by the addition of the following:

"Sec. 84½B: Upon the death of a non-beneficiary member and upon receipt of proper proofs of death and funeral bills, the general secretary and treasurer shall pay said bills to an amount not exceeding $150.00 . . .".

9. In 1916, section 84½A was amended to read:

"The grand lodge shall establish and maintain a fund to be known as a funeral benefit fund, in which all non-beneficiary members shall participate; except such members who automatically become non-beneficiary members as a result of having received payment of their claims under section 70 and 71, who shall only be entitled to participate in this fund after the elapse of twelve full months

from the date that they automatically become such non-beneficiary members; the same to be disbursed exclusively in paying funeral benefits . . .".

10. The constitution and general rules of defendant pertaining to the amount of funeral benefits, dues and the probationary period for such members who automatically became nonbeneficiary members as a result of having received payment of their claims under sections 70 and 71 were changed from time to time as follows:

| Date | Sections | Funeral Benefit | Dues | Probation Period |
|------|----------|-----------------|------|------------------|
| 1911 | 84½ A, B, C | $150 | $.25 | none |
| 1916 | same | 150 | .25 | 12 months |
| 1919 | same | 200 | .40 | 12 months |
| 1922 | same | 300 | .40 | 12 months |
| 1925 | same | 300 | .60 | 12 months |
| 1928 | same | 300 | .60 | 80 months |

(Effective Sept. 1st)

11. On September 28, 1928, Oscar F. Cummings, alleging total and permanent disability, made application for payment of the amount provided in his beneficial certificate under sections 70 and 71; his claim was allowed on December 4, 1928, and payment was received by him on January 12, 1929.

12. From January 1, 1929, until the date of his death, on May 10, 1935, Oscar F. Cummings paid all dues and assessments required as a nonbeneficiary member of the brotherhood to the funeral benefit fund.

13. At the time of his death, Oscar F. Cummings had been a nonbeneficiary member of the brotherhood and a contributor to the funeral benefit fund for a period of 77 months.

14. Since 1903 the constitution of the subordinate lodges of defendant, as set forth in the grand lodge constitution, had provided:

"Section 124: A candidate for admission by initiation who is otherwise qualified, being debarred only by reason of loss of portion of hand or hands, foot or feet, or being

more than forty-five years of age, may be admitted as a non-beneficiary member. . . . Members admitted under this section and not over forty-five years of age, may apply for a class A certificate for death only, subject to laws governing beneficiary certificates. A member whose claim for total and permanent disability has been allowed by the grand lodge may become a non-beneficiary member."

### Discussion

From the findings of fact, it appears that plaintiff's husband became a member of a beneficial society in 1904 and received a certificate which provided for the payment to him of benefits in the event of total disability, or to his beneficiary in case of his death. He thus became a beneficiary member of the association, as distinguished from other members who could not qualify for disability benefits. In 1911, the constitution and general rules were amended so as to establish a funeral benefit fund in which nonbeneficiary members of the brotherhood might participate. From 1911 to 1928, the constitution and general rules relative to the funeral benefit fund were amended with respect to the rates of monthly dues, the amount of funeral benefits and the length of the period which must elapse between the time of admission as a nonbeneficiary member and the date of death. In 1928, the constitution and general rules provided, in section 84½A, that nonbeneficiary members should participate in the funeral benefit fund, except that such members who automatically became nonbeneficiary members as a result of having received payment of their claims for disability should only be entitled to participate in this fund after the elapse of 80 full months from the date they automatically became such nonbeneficiary members.

Cummings automatically became a nonbeneficiary member in January 1929. He paid all dues and assessments required for participation in the funeral benefit fund until May 10, 1935, the date of his death, a period of nearly 77 months. Plaintiff filed a claim for funeral

benefits, and defendant refused to pay, taking the position that inasmuch as the period of 80 months had not elapsed since Cummings became a member of the funeral benefit fund it was not liable.

Plaintiff admits the regularity of the adoption of the amendments to the constitution and general rules, but contends that she is entitled to recover because:

1. Defendant has no power to impair decedent's contract with it by increasing the probationary period as a nonbeneficiary member from 12 to 80 months.

2. Defendant could grant additional rights to a member which were not granted under the original certificate, viz., provide for participation in the funeral benefit fund at certain prescribed rates and upon certain conditions, but, having granted the right, it could not subsequently impose additional restrictions and conditions which would divest, impair and disturb the rights already vested in a member, viz., by providing for a probationary period for members who automatically became entitled to participate in the funeral benefit fund by reason of payment of their disability claims, where none had been required in the inception of the plan.

3. Even though defendant had a right to impose a probationary period by amendment, an amendment increasing this period from 12 to 80 months is unreasonable and therefore invalid.

Cummings' right to participate in disability benefits was governed by the constitution and general rules of defendant association and the certificate which was issued to him in 1904. When the certificate was issued, the constitution provided that the constitution and the general rules and the constitutions of subordinate lodges might be altered, amended or repealed at any meeting of the grand lodge. It is not disputed that these were regularly amended. This provision or condition does not authorize the association to impair vested rights of a member, nor to change his contract in any essential particular without his consent. His agreement to be bound by future bylaws

does not authorize the enactment of bylaws which impair the vested rights of a member: 7 C. J. 1080.

Did Cummings acquire a vested right which would entitle plaintiff here to recover? Certainly he acquired a vested right insofar as the disability benefits were concerned, and defendant honored that right by paying the claim in 1929. What, then, was his right in the funeral benefit fund, and what is the right of his beneficiary, plaintiff here? In determining whether or not there was or is a vested right, the true criterion appears to lie in the determination of the question whether or not an actionable property right has in fact accrued; if so, it cannot be divested, but it is otherwise in case such rights are only prospective or in the process of accruing, in which cases they may be changed or arrested by the association under the general governing power, provided the member in his contract of membership has agreed to conform to after-enacted laws, and provided the right to make alterations is reserved under the original laws of the society: 7 C. J. 1079; Chambers v. Supreme Tent of the Knights, etc., 200 Pa. 244; Coffey v. The Maccabees, 292 Pa. 58.

A majority of the courts hold that an express agreement to be bound by an increase of rates is not necessary to justify such an increase, but that it is sufficient if the member has bound himself to obey bylaws subsequently to be passed: 80 A. L. R. 660. In support of the rule are cited cases from many jurisdictions, but no Pennsylvania case has been found to support it. In Persell v. The Maccabees, 86 Pa. Superior Ct. 402, although the certificate contained an agreement to be bound by bylaws which might thereafter be made, a change of bylaws, increasing the monthly dues from $15 to $87, made after a member's right to total disability benefits had accrued, was held invalid as a material change of the contract, which could not be made against the member's objection. It will be noted, however, that the right to the benefits had accrued. We do not find any conflict between that decision and the rule as laid down, and we believe that the reservation of

authority to amend the constitution and bylaws of defendant association gave defendant the right without further express agreement to change the rates of assessment, the amount of benefits and other conditions relating to the funeral benefit fund, provided the rights of Cummings or his beneficiary were not vested or fixed beyond the possibility of reasonable changes to meet new conditions: Everett v. The Supreme Council, etc., 236 N. Y. 62, 139 N. E. 780.

The right of a fraternal beneficial society to amend its bylaws in the manner provided for in the laws of the society, where the certificate of membership provides that the members shall be bound by the rules and regulations of the society existing at the time the certificate was issued or thereafter enacted, is firmly established, and extends to bylaws increasing rates, changing the plan of assessment for the general good, and changing other terms of the contract, provided such amendments are not arbitrary or unreasonable: Jenkins et al. v. Talbot et al., 338 Ill. 441, 170 N. E. 735.

We are of the opinion that Cummings did not have a vested right to participate in the funeral benefit fund as it was originally constituted. His right to participate was contingent upon his becoming a nonbeneficiary member. He became such a member on January 1, 1929, after his rights as a beneficiary member had been fully discharged by defendant and by his payment of dues into the funeral benefit fund. Prior to his disability he had the right to participate in the funeral benefit fund only in prospect and upon condition that he lose his status as a beneficiary member. Under the terms of the constitution he could accept or reject the funeral benefit plan and was not bound to continue as a nonbeneficiary member. If he was not bound to become a nonbeneficiary member, then the association was not obligated to any funeral benefit contract with him prior to his acceptance of defendant's funeral benefit offer. We think that all that Cummings had was a prospective right to become a member of the

funeral benefit fund, and that this right could be changed or arrested by defendant under decedent's original agreement to conform to alterations in or amendments to the constitution and bylaws until the right had vested.

If, then, a vested right was not disturbed, was the amendment increasing the probationary period from 12 to 80 months unreasonable and therefore invalid? In the past decade, beneficial societies and fraternal organizations paying benefits have been in a great deal of financial difficulty, with resulting losses to their members. The courts, recognizing the distress of these associations, have distinguished the rights of a member of such an association from those of a holder of an insurance contract with a commercial company: Taylor v. Order of Sparta, 254 Pa. 556, 560; and, where it appears that the assessments for beneficial insurance are based upon an impractical plan, have permitted increases of rates to meet the necessities of the situation. They have prescribed, however, that the increase in rates shall not be unreasonable or disproportionate to the necessity of the situation and that the changes shall not work an injustice between individual members and not be discriminatory: Wirtz v. Sovereign Camp, etc., 114 Tex. 471, 268 S. W. 438; Jenkins et al. v. Talbot et al., supra. And the reason for the rule is, as expressed in Jenkins et al. v. Talbot et al., supra, page 471, that "no one can have a vested right in a disaster."

While the increase from 12 to 80 months in the probationary period is considerable, there is no testimony that the amendment was unreasonable, unnecessary, or adopted in bad faith. For all the record shows, it may be that actuaries, in attempting to put the funeral benefit plan on a practical basis, required such a provision. In the absence of proof to the contrary, the increase in the probationary period will be presumed to be reasonable and the burden rests upon plaintiff here to show that no necessity existed therefor: Sovereign Camp, etc., v. Cousins, 26 S. W. (2d) 453 (Texas Civil Appeals, 1930); Case et al. v. Supreme Tribe of Ben Hur, 106 Neb. 220;

352

Supreme Council Catholic Knights of America v. Fenwick et al., 169 Ky. 269, 183 S. W. 906; Demings v. The Supreme Lodge, etc., 131 N. Y. 522, 30 N. E. 572; Supreme Lodge, etc., v. Bieler, Exec., 58 Ind. App. 550, 105 N. E. 244.

*Conclusions of law*

1. Plaintiff is bound by the terms of the constitution and general rules of defendant association which were in effect when her husband became a nonbeneficiary member, on January 1, 1929.

2. The amendments to the constitution and general rules of defendant association, and particularly the amendments to section 84½ passed between 1911 and 1928, were not unreasonable and impaired no vested right of plaintiff's decedent.

3. Plaintiff's decedent was not a member of the funeral benefit fund for a period of 80 months.

4. Plaintiff's bill must be dismissed.